# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| RIMCO, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> DEXSTAR WHEEL <br><br> *Defendant-Intervenor.* | Court No. 21-00588 |

**DEFENDANT-INTERVENOR'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Rule 12(b) of this Court,[1] Dexstar Wheel Division of Americana Development, Inc. ("Dexstar" or "Defendant-Intervenor") hereby moves to dismiss the Plaintiff's Complaint. *See Complaint of Rimco, Inc.*, ECF 8 ("*Complaint*"). As detailed in the *Memorandum in Support of Defendant-Intervenor's Motion to Dismiss Plaintiff's Complaint*, Plaintiff has failed to state a claim on which relief may be granted, and Plaintiff's attempt to challenge the all-others' rate set by the Department of Commerce in the original investigation underlying the administrative review at issue here is time-barred under 28 U.S.C. § 1516a(a)(2)(A), so this Court lacks subject-matter jurisdiction to hear that claim.

---

[1] Rule 12(b) requires that a motion to dismiss for lack of subject-matter jurisdiction and a failure to state a claim upon which relief may be granted must be made before a responsive pleading if a responsive pleading is allowed. As no responsive pleading to the complaint is required for a 28 U.S.C. § 1581(c) case, per Rule 12(a)(1)(A)(i) of this Court, this motion is timely made.

As jurisdiction is a threshold question that must be answered before this Court can proceed to any other questions a Plaintiff attempts to raise (*see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998)), Defendant-Intervenor requests that this Court first examine the jurisdictional question in this case and, because binding precedent makes clear that the answer to that question is in the negative here, dismiss Plaintiff's Complaint in its entirety and with prejudice.

Respectfully Submitted,

/s/ Nicholas J. Birch\_\_\_
Roger B. Schagrin
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C.  20001
*Counsel for Dexstar Wheel*

Dated: January 24, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| RIMCO, INC., <br>   *Plaintiff,* <br> v. <br> UNITED STATES, <br>   *Defendant,* <br> and <br> DEXSTAR WHEEL <br>   *Defendant-Intervenor.* | Court No. 21-00588 |

**ORDER**

Upon consideration of Defendant-Intervenor's Motion to Dismiss Plaintiff's Complaint and the Memorandum in Support of that motion, and all other papers and proceedings herein, it is hereby

**ORDERED** that Defendant-Intervenor's Motion to Dismiss Plaintiff's Complaint is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint is dismissed with prejudice.

 

_____
MARK A. BARNETT, JUDGE

Dated: _____, 2022
   New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| RIMCO, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> DEXSTAR WHEEL <br><br> *Defendant-Intervenor.* | Court No. 21-00588 |

## MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENOR'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

> Roger B. Schagrin
> Nicholas J. Birch
> SCHAGRIN ASSOCIATES
> 900 Seventh Street, N.W.
> Suite 500
> Washington, D.C. 20001
> (202) 223-1700
> *Counsel for Dexstar Wheel*

Dated: January 24, 2022

## TABLE OF CONTINENTS

I. BACKGROUND ................................................................................................................ 4

    a. Commerce Attempted to Review All Possible Respondent Exporters under Review ......... 5

    b. Commerce Made Individual Determinations for All Respondents under Review; No All-Others Rate Exists for This Review ................................................................................. 6

II. ARGUMENT .................................................................................................................... 7

    a. Standard of Review .......................................................................................................... 8

    b. Relief on the Claim Plaintiff Claims to be Making Cannot Be Granted ............................ 9

    c. The Claim Plaintiff Is Actually Making Is Time-Barred So Subject-Matter Jurisdiction Does Not Exist. ............................................................................................................... 13

III. CONCLUSION ............................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................ 8
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................................. 8
*Brit. Steel Corp. v. United States*, 647 F. Supp. 928 (Ct. Int'l Trade 1986) .............................. 14
*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003) ...................................... 12
*Floral Trade Council v. United States*, 822 F.Supp. 766 (CIT 1993) ................................. 11, 13
*Georgetown Steel Corp. v. United States*, 801 F.2d 1308 (Fed.Cir.1986) ..................................... 9
*Hartford Fire Ins. Co. v. United States*, 772 F. 3d 1281 (Fed. Cir. 2014) ..................................... 8
*Maier v. Orr*, 754 F.2d 973 (Fed. Cir. 1985) .................................................................................. 15
*Micron Tech., Inc. v. United States*, 117 F.3d 1386 (Fed. Cir. 1997) .......................................... 11
*Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973 (Fed. Cir. 1994) ............................... 11
*Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347 (Fed. Cir. 2006) .............................. 9
*Rack Room Shoes v. United States*, 718 F. 3d 1370 (Fed. Cir. 2013) ............................................ 8
*Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021 (Fed. Cir. 2012) ........................................................................................................................................ 9
*Snap-on, Inc. v. United States*, 37 C.I.T. 1703 (2013) ............................................................ 12, 13
*St. Bernard Par. Gov't v. United States*, 916 F.3d 987 (Fed. Cir. 2019) ....................................... 9
*Sunpreme Inc. v. United States*, 892 F.3d 1186 (Fed. Cir. 2018) ................................................. 15
*Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289 (Ct. Int'l Trade 2021) ............. 15
*Transcom, Inc. v. United States,* 182 F.3d 876 (Fed. Cir. 1999) .................................................. 11
*Williams v. Sec'y of Navy*, 787 F.2d 552 (Fed.Cir.1986) ............................................................... 9

**Statutes**
19 U.S.C. § 1516a(a)(2)(A) ................................................................................................................ 15
19 U.S.C. § 1675(a)(2) ........................................................................................................................ 11
28 U.S.C. § 1581(c) ............................................................................................................................. 15
28 U.S.C. § 1581(i) .............................................................................................................................. 16

**Regulations**
19 C.F.R. § 351.212(a) ........................................................................................................................ 13
19 C.F.R. § 351.212(c)(1)(i) ............................................................................................................... 11

**Administrative Decisions**
*Certain Steel Trailer Wheels 12 to 16.5 Inches From the People's Republic of China: Antidumping Duty and Countervailing Duty Orders,* 84 Fed. Reg. 45,952 (Dep't Commerce Sept. 3, 2019) ..................................................................................................................................... 14
*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Final Affirmative Countervailing Duty Determination, and Final Affirmative Determination of Critical Circumstances*, 84 Fed. Reg. 32,723 (Dep't Commerce July 9, 2019) ........................ 14

**Other Authorities**
H.R. Conf. Rep. 98-1156, 1984 U.S.C.C.A.N. 5220 ...................................................................... 13

## MEMORANDUM IN SUPPORT OF DEFENDANT-INTERVENOR'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b) of this Court, Defendant-Intervenor Dexstar Wheel Division of Americana Development, Inc. ("Dexstar" or "Defendant-Intervenor") submits the following memorandum in support of its motion to dismiss Plaintiffs' Complaint.

### I. BACKGROUND

In its Complaint, Plaintiff asserts that it is challenging "Commerce's refusal to calculate and {sic} non AFA all others rate {as} unsupported by substantial evidence and not in accordance with law, particularly 19 U.S.C. § 1671d(c)(5)(a)(ii)." ECF 8, ¶ 19. Plaintiff argues that "{t}here is no evidence on the record from which Commerce could reasonably conclude that the 388.1% 'all others' margin appearing in the preliminary results are representative of the subsidies received by non-reviewed parties." *Id.*, ¶ 17. Plaintiff further claims that in the challenged review of the countervailing duty ("CVD") order, it "filed comments urging Commerce to calculate an all others rate for the period of review without including the AFA inferences against mandatory respondents." *Id.*, ¶ 12. Plaintiff states that Commerce rejected Plaintiff's comments as irrelevant and made no revisions as sought by Plaintiff. *Id.*, ¶ 14.

Plaintiff's recounting of the events in the underlying CVD review and the actions taken by the agency omits important information and precludes a meaningful understanding of what occurred. If one reads only the Complaint, one is left with the understanding that Commerce set an all-others based on adverse facts available ("AFA") for some portion of the entries it was reviewing during the review in question, and Plaintiff is challenging that rate. But the Department of Commerce ("Commerce") did not set an AFA all-others rate in this review: it did not set *any* all-others rate in this review.

4

### a. Commerce Attempted to Review All Possible Respondent Exporters under Review.

Commerce published the notice of the opportunity for interested parties to request a review of the CVD order on *Steel Trailer Wheels from China* on September 3, 2019. P.R. 4. In response to that notification, Trans Texas Tire, LLC (a U.S. importer of subject merchandise) requested that Commerce review Chinese exporter Xingmin Intelligent Transportation Systems (Group) Co., Ltd. (P.R. 2), and Trailstar LLC (also a U.S. importer of subject merchandise) requested a review of Chinese exporter Zhejiang Jingu Company Limited. P.R. 3. Plaintiff Rimco, Inc. (also a U.S. importer of subject merchandise) requested that Commerce review "subject merchandise manufactured by Xiamen Topu Imports & Export Co., Ltd., Shanghai Yata Industry Co., Ltd., and Hangzhou Antego Industry Co. Ltd., and imported into the United States by Rimco Inc. during the period February 25, 2019 through December 31,2020." P.R. 3 at 2. Commerce initiated reviews on merchandise exported or manufactured by five Chinese respondents: Hangzhou Antego Industry Co. Ltd. ("Hangzhou"), Shanghai Yata Industry Co., Ltd. ("Shanghai Yata"), Xiamen Topu Imports & Export Co., Ltd. ("Xiamen Topu"), Xingmin Intelligent Transportation Systems (Group) Co., Ltd. ("Xingmin"), and Zhejiang Jingu Company Limited ("Jingu'), as requested by the interested parties. P.R. 13 (*Federal Register* notice of initiation of the review).

Commerce first selected Chinese exporters Xingmin and Jingu as mandatory respondents for individual examination in this review. P.R. 24. In response, Trans Texas Tire withdrew its request for review of Xingmin the following day (P.R. 36) and Trailstar withdrew its request for review of Jingu shortly thereafter (P.R. 111). Because these withdrawals were timely made before the withdrawal deadline set by Commerce, Commerce selected Xiamen Topu as the replacement mandatory respondent for the review. P.R. 113.

For its part, Xiamen Topu simply ignored Commerce. *See* P.R. 116 at 2. Making yet

another attempt to collect necessary information to conduct the review from some interested party, Commerce selected yet another a respondent for individual review, now turning to Shanghai Yata (which, Commerce noted, is owned by Jingu), because "the company that filed a request for review of Shanghai Yata {(Rimco)} did not withdraw its request for review." P.R. 116 at 2-3. But rather than respond to Commerce's inquiries, Jingu/Shanghai Yata informed Commerce that they "will not participate" in the review. P.R. 118. *See also Preliminary Issues and Decision Memorandum* ("*Prelim IDM*") at 1-3, P.R. 121 (Commerce's description of these events).

Commerce also discovered that according to information from U.S. Customs and Border Protection, no entries of subject merchandise from Hangzhou were suspended as subject to the CVD order during the reviewable period. No party challenged that information. As Hangzhou had no reviewable entries, Commerce rescinded the review on Hangzhou, per agency practice. *See Prelim IDM*, P.R. 121 at 3 (stating agency intent to rescind); *Final Issues and Decision Memorandum* ("*Final IDM*") P.R. 131 at 4; and P.R. 132 (*Federal Register* notice of final determination) (rescinding the review of Hangzhou).

b. **Commerce Made Individual Determinations for All Respondents under Review; No All-Others Rate Exists for This Review**

As the request to review Xingmin had been timely withdrawn, Commerce rescinded the review of Xingmin. *Prelim IDM*, P.R. 121 at 4. Because of their refusal to cooperate in the review, Commerce assigned an individual total-AFA rate of 388.31 percent to Shanghai Yata, Xiamen Topu, and Jingu in its preliminary determination. *Prelim IDM*, P.R. 121 at 12. And, as noted, Commerce determined to rescind the review of Hangzhou as there were no entries from that exporter to review. Because it was rescinding the review or was making an individual determination based on total AFA for *each* of the five respondents it had initiated reviews of,

6

*there were no other respondents* for which Commerce needed to determine a rate in the review – whether by applying its standard all-others rate methodology or otherwise. Indeed, nowhere in its preliminary determination does Commerce *even mention* an "all-others" rate for the review. *See Prelim IDM*, P.R. 121; P.R. 127 (*Federal Register* notice of preliminary determination).[1]

In its styled "Comments on Preliminary Determinations" submitted to Commerce during the review, Plaintiff did not challenge Commerce's treatment of any of the respondents that were under review at any point. P.R. 123. Instead, Rimco argued that the 388.31 percent total-AFA rate applied to non-cooperative respondents "cannot simply be averaged and applied as an 'all others' rate for products subject to the order produced or exported by non-mandatory respondents." P.R. 123 at 2. Yet despite affirmatively recognizing that such as "all others rate" would apply to "the remaining non-mandatory respondents," (P.R. 123 at 3) Plaintiff never explained what "remaining non-mandatory respondents" were left in this review for an all-others rate to apply to. Instead, Plaintiff simply claimed that Commerce should calculate a rate using a different methodology suggested by Plaintiff "for other Chinese companies" without identifying what those other companies that rate would ever apply to.

## II.  ARGUMENT

In its Complaint before this Court, Plaintiff continues to simply dance around the central issue that there no all-others rate was calculated in this review. Plaintiff entirely glosses over the fact that Commerce addressed each respondent in the review individually (either assigning each a rate based on their individual actions or rescinding the review individually) and at no point in the review did Commerce determine any all-others rate. *See* EDF 8 at 4. Instead, Plaintiff quotes

---

[1] Other than referencing the all-others rate from the *investigation*, pointing out that rate still applied to exports not under review. *See* P.R. 127; *see also Final IDM, P.R. 131* at 8.

7

Commerce's statement that the agency "did not revise or recalculate the 'all-others' rate as part of this administrative review" entirely out of context as though the agency had simply rejected Plaintiff's arguments on how Commerce should revise an all-others rate purportedly set in the preliminary determination in the review. ECF 8 at 4. But Commerce's statement in context was specifically directed at the all-others rate "as originally set in the underlying investigation." *Final IDM*, P.R. 131 at 8. Commerce did not refuse to consider how it set a rate in this review – it declined to revisit how it set a rate in a prior segment of the proceeding that was not under review. Because Plaintiff argues that Commerce cannot follow a methodology in the review to do something which Commerce never actually did in the review, Plaintiff does not make a claim on which relief can be granted. Plaintiff's apparent goal is to attack the all-others rate that was set in the original investigation and was not under review, but this Court lacks jurisdiction to hear that claim as Plaintiff failed to bring that challenge before this court in anything resembling a timely manner.

    a. **Standard of Review**

Dismissal for failure to state a claim should be granted when a plaintiff fails to plead facts entitling it to a legal remedy. *See Hartford Fire Ins. Co. v. United States*, 772 F. 3d 1281, 1284 (Fed. Cir. 2014). When addressing a motion to dismiss for failure to state a claim, the factual allegations of the complaint should be construed favorably to the plaintiff. *Scheuer v. Rhodes, et al.*, 416 U.S. 232, 236 (1974). However, the rule that a court must accept as true all well-pleaded factual allegations does not apply to legal conclusions. *Rack Room Shoes v. United States*, 718 F. 3d 1370, 1376 (Fed. Cir. 2013) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Rather, a plaintiff's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, "the Court of International Trade, like all federal courts, is a court of limited jurisdiction, and that the party invoking that jurisdiction bears the burden of establishing it." *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). "It is well settled that limitations on subject-matter jurisdiction are not waivable; the court must address jurisdictional issues, even *sua sponte*, whenever those issues come to the court's attention, whether raised by a party or not…." *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992-93 (Fed. Cir. 2019). The strict nature of jurisdictional issues in federal courts also carries over into the procedural requirements parties must abide by under jurisdictional rules: "Since section 1516a(a)(2)(A) specifies the terms and conditions upon which the United States has waived its sovereign immunity in consenting to be sued in the Court of International Trade, those limitations must be strictly observed and are not subject to implied exceptions." *Georgetown Steel Corp. v. United States*, 801 F.2d 1308, 1312 (Fed. Cir. 1986). Thus, a party "may not expand a court's jurisdiction by creative pleading." *Norsk Hydro*, 472 F.3d at 1355. Instead, this Court will "look to the true nature of the action" to determine if jurisdiction lies. *Id.* (*quoting Williams v. Sec'y of Navy*, 787 F.2d 552, 557 (Fed.Cir.1986)).

Where a motion challenges whether jurisdiction exists (rather than if jurisdiction is sufficiently alleged), "the factual allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true." *Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

b. **Relief on the Claim Plaintiff Claims to be Making Cannot Be Granted**

Here, Plaintiff's thread-bear recitation of facts fails to raise a right to relief even to the speculative level. Plaintiff asks this Court to grant it relief by ordering Commerce not to do something that Commerce did not do. Plaintiff claims that it challenges how Commerce set the all-others rate in the review at issue, but no where does it point to facts that show Commerce

9

took such an action. Plaintiff's conclusory statements that Commerce cannot legally set an all-others rate in some way fail, even if construed favorably to Plaintiff, to address why the agency would be required to set an all-others rate at all in the review, much less that it set it in the way Plaintiff claims. Plaintiff alleges no facts and makes no claims that Commerce did not set a rate or improperly set a rate for any entry or respondent under review. Instead, facts which Plaintiff fails to address show Commerce did not and could not have taken the action Plaintiffs claims to be challenging.

As a preliminary note, Plaintiff does not (and did not before the agency) challenge Commerce's treatment of *any* of the named respondents in the review. *See* Complaint, ECF 8. That includes Commerce's decision to allow the withdrawal of the requests on Jingu and Xingmin, Commerce's application of a total AFA rate to Xiamen Topu and Shanghai Yata due to their noncooperation, and Commerce's rescission of the review of Hangzhou as it had no suspended entries. Thus, all these (actual) individual agency determinations stand unchallenged.[2]

So Plaintiff's attacks on a nonexistent all-other's rate determination in this review are baffling. Even if this Court were to order Commerce to set an all-others rate in this review, there are no "all-others" entries under review to which that rate would apply. Each entry under review is linked to a respondent for which the review was rescinded[3] or that will have a total-AFA rate applied for failing to cooperate in the review. Any of Plaintiff's entries from any of the respondents it requested reviews on (Xiamen Topu, Shanghai Yata, and Hangzhou) fall into one of these individually-determined categories and so would remain unaffected by any revision to

---

[2] Nor could Plaintiff now raise these issues properly before the Court, as it entirely failed to exhaust its administrative remedies by failing to raise them before the agency. *See Final IDM*, P.R. 131 at 4-6 (setting out the claims Plaintiff did make before the agency).

[3] So that entry will be liquidated at whatever rate applied to that exporter as the cash-deposit rate at the time of the entry. *See* 19 U.S.C. § 1675(a)(2), 19 C.F.R. § 351.212(c)(1)(i).

10

an all-others rate.[4]

Instead, it appears that Plaintiff's goal is to mislead the Court into ordering Commerce to create a new all-others rate to be applied to *other* entries that are *not under* review. The Court cannot do so:

> If an interested party wants Commerce to assess duties at the actual, rather than the estimated, rate of dumping, it may request administrative review of the duties under section 751 of the 1979 Act. If no party makes such a request, Commerce instructs Customs automatically to assess duties at the estimated rate.

*Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 976–77 (Fed. Cir. 1994).

As the Federal Circuit has held,

> **If no antidumping review is requested with respect to a particular order or with respect to particular merchandise, the regulation provides that antidumping duties will be collected on the unspecified merchandise in the amount of the cash deposit paid at the time of importation**. *See* 19 C.F.R. § 353.22(e)(2) (1991); 19 U.S.C. § 1504(a); *see also Federal–Mogul Corp. v. United States*, 822 F.Supp. 782, 787–88 (CIT 1993) ("[T]he statutory framework for administrative reviews clearly anticipates that in cases where a company makes cash deposits on entries of merchandise subject to antidumping duties, and no administrative review of those entries is requested, the cash deposit rate automatically becomes that company's assessment rate for those entries."); *Floral Trade Council v. United States*, 822 F.Supp. 766, 768–71 (CIT 1993) (the "all others" rate established in the original investigation remains the antidumping duty rate for companies that were subject to the "all others" rate and were not reviewed in a subsequent administrative review); *UCF America, Inc. v. United States*, 870 F.Supp. 1120, 1126–28 (CIT 1994) (same).

*Transcom, Inc. v. United States,* 182 F.3d 876, 880 (Fed. Cir. 1999) (emphasis added); *see also*

---

[4] Indeed, before this Court, Plaintiff has sought and received an injunction against the liquidation of any of Plaintiff's entries "{p}roduced and/or exported by" Xiamen Topu, Shanghai Yata, and Hangzhou. ECF 17 Exhibit A. Yet, as Plaintiff has not challenged Commerce's treatment of any of the entries from those exporters, even if Plaintiffs is successful before the Court in forcing Commerce to calculate an all-others rate to its liking, none of the entries covered by the injunction will be affected as none would be subject to any all-others rate. Of course, Plaintiff could not have sought an injunction against the liquidation of any entries that would be affected by a new all-others rate in the review, as there are no such entries. This again demonstrates how Plaintiff seeks relief that cannot be granted.

11

*Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1392 (Fed. Cir. 1997) ("**the 'all others' rate is not revised** when the dumping margins used to compute the rate have been successfully challenged through an administrative review requested by an entity subject to a separate dumping rate." (emphasis added)).

The regulation cited by the Federal Circuit Court in the *Transcom* quotation above, now 19 C.F.R. § 351.212, applies to both antidumping and countervailing duties. It provides that,

> If a review is not requested, duties are assessed at the rate established in the completed review covering the most recent prior period or, if no review has been completed, the cash deposit rate applicable at the time merchandise was entered.

19 C.F.R. § 351.212(a).

Congress specifically intended that Commerce "should provide by regulation for the assessment of antidumping and countervailing duties on entries for which review is not requested." H.R. Conf. Rep. 98-1156, 181, 1984 U.S.C.C.A.N. 5220, 5298. Commerce has done so. And so if no review is requested of entries from a specified exporter/producer, the rate (both the liquidation rate for the suspended entries under review *and* the cash deposit rate on any future entries from that exporter/producer) do not change.

Thus, the Federal Circuit has held that "Title 19, § 1675(a)(2)(C), only requires Commerce to apply the final results of an administrative review to those import transactions specifically covered by the review." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007–08 (Fed. Cir. 2003).

> If the review did not examine a particular importer's transaction, then that importer's entries enjoy no statutory entitlement to the rates established by the review. **The "entries" must be "covered by the determination" to gain entitlement to the review's results** as the "basis for the assessment" of duties.

*Id.*, 348 F.3d at 1005-06 (emphasis added). And this Court has stated, "{t}he benefit from lower CVD rates calculated in an administrative review or subsequent judicial review must be obtained

12

by participating in the review processes, which is intended as the proper forum for challenging erroneous rate determinations." *Snap-on, Inc. v. United States*, 37 C.I.T. 1703, 1712–13 (2013).

Thus, to the extent to Plaintiff seeks to force Commerce to create a new all-others rate to be applied to any entries not under review (even to those entries for which the review was rescinded), such application would be contrary to how CVD reviews function under relevant law and precedent, and therefore cannot be granted. To the extent that Plaintiff seeks to have a all-others rate created for the review that could apply only to entries actually under review—as required for such a review rate—all such entries have had individual treatment by the agency; so any all-others rate properly kept within the bounds of the entries under review would apply to no entries at all. Either way, Plaintiff cannot get the relief it states it seeks, a revised all-others rate relevant to any entries. Thus, this Court should dismiss the claim Plaintiff asserts it is making for Plaintiff's failure to state a claim on which relief can be granted. Plaintiff pleads no facts that suggest Commerce was required to set any all-others rate in any way in the review.

    **c.  The Claim Plaintiff Is Actually Making Is Time-Barred So Subject-Matter Jurisdiction Does Not Exist**

As discussed above, Plaintiff's true attack is on the all-others rate that was set in the investigation. The relief Plaintiff seeks—a new all-others rate not based on AFA—could only effect entries (either past entries or future entries as the new cash-deposit rate) that are subject to Commerce's CVD order but were not part of Commerce's review (where all entries are covered by an individually-determined rate). That is, the relief Plaintiff actually seeks is a revision to the all-others rate Commerce set in the investigation. As discussed above, that investigation rate remains throughout the life of the order as the applicable rate for any "other" entries that do not become subject for review. *See Floral Trade Council v. United States*, 822 F.Supp. 766, 768–71 (CIT 1993). As Plaintiff has failed to challenge Commerce's treatment that covered all entries

13

subject to this review, the only relief Plaintiff can seek is a revision of the all-others rate set in the investigation.

But Plaintiff failed to make any timely challenge to that investigation rate. "The statute provides two pathways for importers … to challenge a CVD order …—a challenge to the investigation and a challenge to the administrative review." *Snap-on*, 37 C.I.T. at 1713. Here, Plaintiff has not challenged Commerce's treatment of any entries actually subject to the administrative review. And Plaintiff brought no challenge to the investigation itself before this Court. It cannot now raise such a challenge. *See*, *e.g.*, *Brit. Steel Corp. v. United States*, 647 F. Supp. 928, 930 (Ct. Int'l Trade 1986)*, vacated in part on other grounds*, 661 F. Supp. 68 (Ct. Int'l Trade 1987) (plaintiff's claim that was "unrelated to the administrative determination that is contested in" the case before the Court required the commencement of a separate action that must independently meet jurisdictional requirements).

Plaintiff here pleads that as its challenge is to a countervailing duty action by Commerce, jurisdiction lies under 28 U.S.C. § 1581(c). ECF 4 at 2. But 19 U.S.C. § 1516a(a)(2)(A) requires that any challenge to such a determination by Commerce be brought within 30 days of its publication in the *Federal Register*. Nowhere does Plaintiff plead any facts that would even arguably allow it to now challenge the all-others rate Commerce set in the underlying CVD investigation in contravention of that jurisdictional limitation. Commerce published its final affirmative CVD determination on July 9, 2019 (*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Final Affirmative Countervailing Duty Determination, and Final Affirmative Determination of Critical Circumstances*, 84 Fed. Reg. 32,723 (Dep't Commerce July 9, 2019)) and the CVD order on September 3 of that year (*Certain Steel Trailer Wheels 12 to 16.5 Inches From the People's Republic of China: Antidumping Duty*

*and Countervailing Duty Orders,* 84 Fed. Reg. 45,952 (Dep't Commerce Sept. 3, 2019)). Thus, the jurisdictional deadline for challenging the all-others rate that Plaintiff is now attempting to challenge was, at the latest, early December, 2019, nearly two years prior to Plaintiff's summons.

Indeed, other subject importers did timely challenge the rates set in Commerce's investigation before this Court. In *Trans Texas Tire, LLC v. United States*, importer Trans Texas Tire challenged the rate Commerce set for Xingmin (based on AFA due to Xingmin's refusal to cooperate in the investigation as well) in the investigation as "unjustifiably and punitively high and therefore unlawful" – a claim this Court rejected. *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289, 1305-07 (Ct. Int'l Trade 2021) . These are virtually the same claims Plaintiff here now makes about the all-others rate. Had Plaintiff made the effort in a timely matter, it could have brought these challenges and had them heard by this Court, exactly as Trans Texas Tire did. Instead, Plaintiff slept on its right to make that challenge until years later.[5]

This Court need not take a challenge as described by the plaintiff, but will "look to the true nature of the action" to determine if jurisdiction lies. *Maier v. Orr*, 754 F.2d 973, 982 (Fed. Cir. 1985). As the relief Plaintiff seeks would have no effect on any entities actually subject to Commerce's review, it is plain that the true nature of Plaintiff's action is a challenge to the all-others rate Commerce set in the investigation. The time for that challenge has long past, so this Court must dismiss Plaintiff's attempt to rise it now.

---

[5] This Court's consideration of these claims also demonstrated why, even had it been pled by Plaintiff, jurisdiction would not lie under 28 U.S.C. § 1581(i). As the Court is aware, § 1581(i) jurisdiction is "residual jurisdiction" and "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018). As importers who were displaced with the rates in the investigation in fact brought a challenge to those rates under § 1581(c) which were fully considered by this court (*Trans Texas Tire*, 519 F. Supp. 3d at 1298), that subsection was clearly available and adequate to provide a possible remedy for such claims.

### III.   CONCLUSION

For the reasons set out herein, Defendant-Intervenor requests that the Court dismiss Plaintiffs' complaint in its entirety for failure to state a claim upon which relief may be granted and for lack of subject matter jurisdiction.

Respectfully Submitted,

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001
*Counsel for Dexstar Wheel*

Dated: January 24, 2022

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedure 2(B)(2) of this Court, I hereby certify that the foregoing memorandum contains 4,176 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in the Court's Chambers Procedures.

/s/ Nicholas J. Birch
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C.  20001
*Counsel for Dexstar Wheel*

Dated: January 24, 2022